UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PETITION OF REPUBLIC OF KAZAKHSTAN FOR AN ORDER DIRECTING DISCOVERY FROM DECHERT LLP PURSUANT TO 28 U.S.C. § 1782. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Misc. Action No. _____ |

## *EX PARTE* PETITION FOR DISCOVERY IN AID OF A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782

Pursuant to 28 U.S.C. § 1782, the Republic of Kazakhstan ("Kazakhstan" or "Petitioner") submits this Petition for an Order Directing Discovery, seeking an order permitting it to issue subpoena(s) to Dechert LLP ("Dechert") that will assist Petitioner in pending foreign legal proceedings.  Attached hereto are a proposed order, a proposed form of a subpoena duces tecum (Exhibit A) and the Declaration of Matthew H. Kirtland in support of this Petition (Exhibit B).

### REASONS FOR GRANTING THE PETITION

I.    PETITIONER'S PURPOSE FOR SEEKING § 1782 DISCOVERY

1.    Petitioner respectfully requests an order authorizing the issuance of subpoena(s) to Dechert.  Dechert maintains an office at 1095 Avenue of the Americas, New York, New York, 10036-6797.  Kirtland Decl. ¶ 4.

2.    Petitioner requires the requested discovery in connection with foreign legal proceedings that currently are pending in the courts of England, the Netherlands, Belgium, and Luxembourg (the "Foreign Proceedings").  *Id.* ¶ 5.

1

A.    THE SCC ARBITRATION

3.    The Foreign Proceedings arise out of a prior international arbitration that Anatolie Stati, Gabriel Stati, Ascom Group, S.A. ("Ascom"), and Terra Raf Trans Trading Ltd. (collectively "the Stati Parties") commenced against Petitioner before the Arbitration Institute of the Stockholm Chamber of Commerce (the "SCC Arbitration"). *Id.* ¶ 6.

4.    In the SCC Arbitration, the Stati Parties demanded compensation for alleged expropriation by Petitioner of certain assets in Kazakhstan. *Id.* One of the assets for which the Stati Parties sought compensation was a liquefied petroleum gas plant (the "LPG Plant"). *Id.*

5.    On December 19, 2013, an award was issued in the SCC Arbitration in favor of the Stati Parties against Petitioner ("SCC Award"). *Id.* ¶ 7. As part of the award, the Tribunal relied on various allegations by the Stati Parties to award them $199 million in compensation for alleged expropriation of the LPG Plant. *Id.*

6.    The Stati Parties initiated proceedings to enforce the SCC Award in multiple jurisdictions, including in the courts of England, the Netherlands, Belgium, and Luxembourg. *Id.* ¶ 8. The $199 million valuation of the LPG Plant is, among other things, directly at issue in each of these proceedings. *Id.*

7.    Kazakhstan contends that the Stati Parties procured the SCC Award by fraud, and that the SCC Award is therefore unenforceable in England, the Netherlands, Belgium and Luxembourg.[1] *Id.* ¶ 9. Specifically, Kazakhstan contends that (a) the Stati Parties used a number

---

[1] The Stati Parties also have sought to enforce the SCC Award in the United States in an action before the United States District Court for the District of Columbia, which is captioned *Anatolie Stati et al. v. Republic of Kazakhstan*, No. 1:14-cv-1638-ABJ (D.D.C.). In that action, Kazakhstan has a pending request for leave to amend its defenses to enforcement of the SCC Award to include the contention that the Stati Parties procured the SCC Award by fraud. *See* Mot. for Leave to File Additional Grounds in Support of Opposition to Petition to Confirm Arbitral Award (ECF 32); Mot. for Reconsideration (ECF 37). Also, on October 5, 2017, Kazakhstan also has filed a complaint against the Stati Parties alleging that their fraudulent conduct violated, *inter alia*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), which is captioned *Republic of Kazakhstan v. Anatolie Stati et al.*, No. 1:17-cv-02067-ABJ (D.D.C.). Kazakhstan is in the process of serving this complaint. *See* Kirtland Decl. ¶ 9 n.1.

2

of schemes to fraudulently inflate the construction costs of the LPG Plant, including through multiple related-party transactions with a sham company called Perkwood Investment Limited ("Perkwood"); (b) throughout the SCC Arbitration, the Stati Parties relied on false evidence to claim that they had invested over USD 245 million in the LPG Plant, when in fact such sums were not invested in the LPG Plant; (c) the Stati Parties communicated the fraudulently inflated LPG constructions costs to their auditor, and thereby obtained falsified financial statements, which they also relied upon in the SCC Arbitration; (d) before the SCC Arbitration commenced, the Stati Parties used the falsified financial statements to procure an indicative bid from the Kazakh state-owned company KazMunaiGas ("KMG") to purchase the LPG Plant in the amount of USD 199 million; and (e) the Stati Parties used this fraudulently obtained KMG indicative bid in the SCC Arbitration to obtain the award of $199 million in compensation for the LPG Plant. *Id.*

### B. THE PROCEEDINGS IN ENGLAND

8.     In England, on February 24, 2014, the Stati Parties initiated proceedings to enforce the fraudulently procured SCC Award in the High Court of Justice, Queen's Bench Division, Commercial Court (the "London Court") in London, captioned *Anatolie Stati et al. v. Republic of Kazakhstan*, CL-2014-000070. These proceedings were brought under the New York Convention, as incorporated in the English Arbitration Act 1996. *Id.* ¶ 10.

9.     On June 6, 2017, on the basis of evidence and legal submissions, the London Court issued a judgment that concluded that "there is a sufficient prima facie case that the [SCC] Award was obtained by fraud," and that the interests of justice require that Kazakhstan's fraud allegations be "examined at trial and decided on their merits." *Id.* ¶ 11. The trial of Kazakhstan's fraud allegations is scheduled to occur in November 2018. *Id.*

C.     THE PROCEEDINGS IN THE NETHERLANDS

10.    On August 23, 2017, the Stati Parties filed an *ex parte* application with the District Court in Amsterdam, the Netherlands (the "Dutch Court"), seeking leave to levy a number of pre-judgment attachments against assets purportedly belonging to Kazakhstan. *Id.* ¶ 12.  The Stati Parties filed an amended application on August 31, 2017.  *Id.*

11.    In a September 8, 2017 decision, the Dutch Court authorized some but not all of the *ex parte* prejudgment attachments.  *Id.* ¶ 13.  The Dutch Court authorized the levying of the attachments under the condition that the Stati Parties institute proceedings on the merits—*i.e.*, a request for an exequatur.  *Id.*

12.    On September 14, 2017 the Stati Parties levied the allowed attachment and garnishments.  *Id.*  The attachment that has been levied on JSC Samruk-Kazyna's shares in its Dutch subsidiary is still in place.  *Id.*  An application to have this attachment lifted has been denied by the Dutch Court.  *Id.*  The matter is currently pending before the Amsterdam Court of Appeal.  *Id.*  The garnishment that has been levied with Procon Europe B.V. has been lifted pursuant to an order by the Dutch Ministry of Justice.  *Id.*

13.    On September 26, 2017, the Stati Parties filed a request for an exequatur with the Amsterdam Court of Appeal.  *Id.* ¶ 14.

14.    By order dated January 23, 2018, the Dutch Court lifted the *ex parte* attachments levied by the Stati Parties on Bank of New York Mellon SA/NV, insofar as those attachments cover (i) assets which are part of the National Fund, (ii) bank and securities accounts in the name of the National Bank of Kazakhstan, (iii) claims based on the Global Custody Agreement and monies and securities held pursuant to the Global Custody Agreement and (iv) other assets of the

4

National Bank of Kazakhstan.  The Dutch Court found, among other things, that the Stati Parties had breached an "obligation to be truthful" to the Court.  *Id.* ¶ 15.

15.     A hearing on the exequatur proceedings is scheduled for June 22, 2018.  *Id.* ¶ 16.

16.     In the Dutch exequatur proceedings, Kazakhstan is contending that the SCC Award is unenforceable and therefore should be not granted exequatur because the Stati Parties procured the SCC Award by fraud.  *Id.* ¶ 17.

**D.     THE PROCEEDINGS IN BELGIUM**

17.     On September 29, 2017, the Stati Parties filed an application for permission to make a prejudgment attachment (in the form of a preliminary garnishment) against Kazakhstan in the Brussels First Instance Court (the "Brussels Court").  *Id.* ¶ 18.  The Brussels Court issued a preliminary garnishment order on October 11, 2017.  *Id.*  Kazakhstan filed an application to set aside the preliminary garnishment order on November 20, 2017.  *Id.*  An introductory hearing was held on December 1, 2017.  *Id.*  The substantive hearing is currently scheduled to be held on April 27, 2018.  *Id.*

18.     On November 13, 2017, the Stati Parties filed an *ex parte* exequatur application with the Brussels Court.  *Id.* ¶ 19.  On December 11, 2017, the exequatur was granted on an *ex parte* basis.  *Id.*  The exequatur decision was served on Kazakhstan on January 2, 2018.  *Id.*  Kazakhstan served a summons to set aside the exequatur on February 2, 2018.  *Id.*  An introductory hearing is scheduled to be held on March 13, 2018.  In these proceedings, Kazakhstan is contending that the SCC Award is unenforceable and therefore should be not granted exequatur the Stati Parties procured the SCC Award by fraud.  *Id.*

E.      THE PROCEEDINGS IN LUXEMBOURG

19.      On August 16, 2017, the Stati Parties *ex parte* served a garnishment order based on the SCC Award to presumed debtors of Kazakhstan located in the Grand Duchy of Luxembourg in order to seize certain specified monies. *Id.* ¶ 20.  The Stati Parties subsequently served a summons to Kazakhstan to appear before a competent Luxembourg judge in order for the garnishment to be validated and so to obtain payments from the presumed debtors. *Id.*

20.      On August 24, 2017, the Stati Parties filed an *ex parte* request for exequatur of the SCC Award with the President of the Luxembourg District Tribunal. *Id.* ¶ 21.  On August 30, 2017, exequatur of the SCC Award was issued. *Id.*

21.      Subsequently, the Stati Parties served the exequatur on Kazakhstan. *Id.* ¶ 22.  On November 2, 2017, Kazakhstan filed an appeal of the exequatur. *Id.*  The appeal is currently pending. *Id.*

22.      On December 1, 2017, the Stati Parties ex parte served a second garnishment order based on the SCC Award to additional presumed debtors of Kazakhstan located in the Grand Duchy of Luxembourg in order to seize certain specified monies. *Id.*  The Stati Parties subsequently served a summons to Kazakhstan to appear before a competent Luxembourg judge in order for this garnishment to be validated and so to obtain payments from the presumed debtors. *Id.*

23.      In the Luxembourg exequatur proceedings, Kazakhstan is contending that the SCC Award is unenforceable and therefore should not be granted exequatur because the Stati Parties procured the SCC Award by fraud. *Id.* ¶ 23.

F.     DOCUMENTS IN THE POSSESSION, CUSTODY AND CONTROL OF DECHERT LLP

24.     As set forth below, upon information and belief, Dechert is in possession, custody

and control of documents evidencing or otherwise relating to the Kazakhstan's fraud allegations,

and therefore to its contentions in the proceedings pending in England, the Netherlands,

Belgium, and Luxembourg.  Specifically, Dechert is in possession of information relating to,

*inter alia*, the following subjects:  the Stati Parties' investment in the LPG Plant, the Stati

Parties' financial statements, the Stati Parties' communications and representations regarding the

same, and the Stati Parties' attempt to enforce the fraudulently procured SCC Award.

25.     To fund their investments in Kazakhstan, including the LPG Plant, the Stati

Parties raised money from investors.  Specifically, the Stati Parties, acting through companies

that they controlled—Tristan Oil Ltd. ("Tristan"), Kazpolmunay LLP ("KPM"), and

Tolkynneftegaz LLP ("TNG")—entered into an Indenture with Wells Fargo Bank, National

Association ("Wells Fargo").  Kirtland Decl. ¶ 24; Ex. 1 thereto.  Wells Fargo served as the

trustee.  Kirtland Decl.¶ 25.  Pursuant to the Indenture and its amendments, Notes were sold to

multiple investors (the "Noteholders").  *Id.*  The Indenture contained covenants regarding

financial transactions and reporting to protect the rights of the Noteholders.  *Id.*

26.     First, Section 4.12 of the Indenture stated that Tristan, KPM and TNG could not

"make any payment to, or sell, lease, transfer or otherwise dispose of any of its properties or

assets to, or purchase any property or assets from, or enter into or make or amend any

transaction, contract agreement, understanding, loan, advance or guarantee with, or for the

benefit of, any Affiliate," unless:

- If the aggregate consideration was in excess of $1.0 million, the transaction was
  required to be on an arm's length basis (*i.e.*, the transaction was on "terms that are

7

no less favorable to [Tristan] or to [KPM or TNG] than those that would have been obtained in a comparable transaction by [Tristan] or [KPM or TNG] with an unrelated Person");

- If the aggregate consideration was in excess of $3.0 million, Tristan was required to deliver to the Trustee (*i.e.*, Wells Fargo) a resolution of Tristan's board of directors set forth in an Officers' Certificate certifying that by a majority of the disinterested members of the board of directors and at least one independent director of the board of directors have determined that the transaction complied with Section 4.12;

- If the aggregate consideration was in excess of $10.0 million, Tristan was required to deliver to the Trustee (*i.e.*, Wells Fargo) "an opinion as to the fairness to [Tristan] or [KPM or TNG] of such Affiliate Transaction from a financial point of view issued by an accounting, appraisal or investment banking firm of national standing[.]"

Kirtland Decl. ¶ 26.

27.    Second, Section 4.03 the Indenture required that KPM and TNG produce combined financial statements with Tristan on a quarterly and annual basis, as well as a reserve report from an independent petroleum engineer on an annual basis. *Id.* ¶ 27.

28.    Third, Section 4.04(a) of the Indenture required Tristan, KPM and TNG to deliver to the Trustee, *i.e.*, Wells Fargo, within ninety (90) days after the end of each fiscal year, an Officers' Certificate stating that a review of the activities of Tristan had been made "with a view to determining whether [Tristan] has kept, observed, performed and fulfilled its obligations" under the Indenture, and stating that, for each Officer signing the certification, "to the best of his

or her knowledge [Tristan] has kept, observed, performed and fulfilled each and every covenant" of the Indenture and "is not in default in the performance or observation of any of the terms, provisions and conditions" of the Indenture. *Id.* ¶ 28.

29.     Fourth, Section 4.04(b) of the Indenture further required that the year-end financial statements delivered pursuant to Section 4.03 be accompanied by a written statement of Tristan's independent public accountants that "in making the examination necessary for certification of such financial statements, nothing has come to their attention that would lead them to believe that [Tristan] has violated any of the provisions of Article 4 or Article 5 hereof, or if any such violation has occurred specifying the nature and period of existence thereof," including, *inter alia*, Section 4.12's restrictions on transactions with Affiliates. *Id.* ¶ 29.

30.     On December 17, 2012, the Stati Parties as well as Tristan, on the one side, and certain of the Noteholders, on the other side, entered into a so-called "Sharing Agreement and Assignment of Rights" (the "Sharing Agreement"). Kirtland Decl. ¶ 30; Ex. 2 thereto. Under the Sharing Agreement, any amounts collected by the Stati Parties on the SCC Award are to be paid on an account administered by a security agent. Kirtland Decl. ¶ 31. The Sharing Agreement provides a mechanism for the distribution of the any proceeds among the Stati Parties and the Noteholders. *Id.*

31.     The Noteholders are represented by several lawyers from Dechert's New York office (and at least one lawyer from Dechert's London office). *Id.* ¶ 32. Dechert has represented an ad hoc committee of the Noteholders since 2012. *Id.*

32.     The discovery that Petitioner seeks from Dechert is relevant to Kazakhstan's fraud allegations, and therefore to its contentions in the proceedings pending in England, the Netherlands, Belgium and Luxembourg. Specifically, Petitioner seeks discovery that relates to

9

the Stati Parties' investment in the LPG Plant, the Stati Parties' financial statements, and the Stati Parties' attempt to enforce the SCC Award, including but not limited to the following:

- all communications with the Stati Parties and any entities controlled by the Stati Parties, including Tristan, KPM, TNG, and Perkwood;

- all communications with any representatives or persons working on behalf of the Stati Parties or any entities controlled by the Stati Parties (such as Tristan, KPM, TNG, and Perkwood), including but not limited to any attorneys for the Stati Parties or any attorneys for entities controlled by the Stati Parties;

- all documents related to the issuance of any Notes pursuant to the Indenture and any amendments thereto;

- all documents related to the Stati Parties' investment in the LPG Plant;

- all resolutions of Tristan's board of directors set forth in an Officers' Certificate pursuant to Section 4.12 of the Indenture;

- all fairness opinions rendered pursuant to Section 4.12 of the Indenture;

- all financial statements of any entities controlled by the Stati Parties, including but not limited to the financial statements of Tristan, KPM and TNG, produced pursuant to Section 4.03(a) of the Indenture;

- all reserve reports produced pursuant to Section 4.03(a) of the Indenture;

- all Officers' Certificates delivered pursuant to Section 4.04(a) of the Indenture;

- all written statements made by Tristan's independent public accountants pursuant to Section 4.04(b) of the Indenture;

- all documents relating to Perkwood – the sham company used to facilitate the Stati Parties' fraud;

- all documents related to the Stati Parties' attempts to enforce the SCC Award, including funding for the same; and

- all documents related to any fraud or allegations of fraud committed by the Stati Parties and any entities controlled by the Stati Parties, including Tristan, KPM, TNG, and Perkwood.

33.     This is a readily defined and concise set of documents.  Likewise, any requested depositions related to these documents and therefore will be equally concise.

## II.     THE REQUIREMENTS OF SECTION 1782 ARE SATISFIED

34.     To authorize discovery under 28 U.S.C. § 1782, three requirements must be met: (1) the application must be made by an interested party or upon application of a foreign or international tribunal; (2) the party from whom discovery is sought must "reside" or be "found" in the jurisdiction of the district court where the § 1782 petition has been filed; and (3) the document or testimony must be for "use" in a foreign or international tribunal.  All three requirements are met here.

35.     First, Petitioner is an "interested party" as it was a party to the SCC Arbitration and is a party to the proceedings pending in England, the Netherlands, Belgium and Luxembourg.  Kirtland Decl. ¶ 33.

36.     Second, Dechert is "found" or "resides" in this jurisdiction.  Dechert maintains an office at 1095 Avenue of the Americas, New York, New York, 10036-6797.  *Id.* ¶ 4.

37.     Third, the documents sought by Petitioner are "for use" in the proceedings pending in England, the Netherlands, Belgium and Luxembourg.  *Id.* ¶ 34.  Specifically, the requested documents will be used by Petitioner to support its contentions in those jurisdictions that the SCC Award was procured by fraud and therefore is not enforceable.  *Id.*  Likewise, any

11

depositions sought to be taken will relate to these documents, as will any follow-up subpoenas for documents or depositions.

III.    THE *INTEL* FACTORS WEIGH IN FAVOR OF GRANTING THE PETITION

38.     The Supreme Court has identified four discretionary factors that a district court must consider when ruling on a § 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether discovery would be unduly intrusive or burdensome. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).  Here, all four factors weigh in favor of granting the Petition.

39.     First, Dechert is not a participant in the proceedings pending in England, the Netherlands, Belgium or Luxembourg.  Kirtland Decl. ¶ 35; *cf. Intel*, 542 U.S. at 264 ("[W]hen the person from whom discovery is sought is a participant in the foreign proceeding ..., the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.").  Second, there is no indication, or reason to believe, that the courts of England, the Netherlands, Belgium or Luxembourg would be unreceptive to judicial assistance by § 1782 discovery.  Kirtland Decl. ¶ 36.  Third, this request is not sought to, and does not have the effect of, circumventing any foreign proof-gathering restrictions or other policies.  *Id.* ¶ 37.  Lastly, this request is not unduly burdensome or intrusive.  *Id.* ¶ 38.  It seeks a discrete category of discovery in the possession, custody and control of Dechert.  *Id.*  Furthermore, the Dechert (recipient of the subpoena) will have all of its

rights protected under Federal Rule of Civil Procedure 45.  The *Intel* factors thus weigh in favor of granting the Petition.

## CONCLUSION

40.     WHEREFORE, because the Petition complies with the requirements of 28 U.S.C. § 1782, and the discretionary factors weigh in favor of it being granted, Petitioner respectfully moves the Court to issue the attached order granting the Petition, authorizing the issuance of a subpoena in the form attached hereto as Exhibit A, and authorizing Petitioner to issue additional subpoenas for the production of documents and/or depositions of Dechert as Petitioner reasonably deems appropriate and as is consistent with the Federal Rules of Civil Procedure.

Dated: February 12, 2018

Felice B. Galant
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, New York 10019
Tel.: (212) 318-3000
Fax: (212) 318-3400
felice.galant@nortonrosefulbright.com

OF COUNSEL:
Matthew H. Kirtland (pending filing of *pro hac vice* application)
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, D.C. 20001
Tel.: (202) 662-0200
Fax: (202) 662-4642
matthew.kirtland@nortonrosefulbright.com

*Attorneys for Petitioner Republic of Kazakhstan*